UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT K. DECKER,                           Case No. 19-11654
              Plaintiff,
v.                                          Matthew F. Leitman
                                            United States District Judge
LILITA INFANTE, *et al.*,
              Defendants.            Curtis Ivy, Jr.
_____/                  United States Magistrate Judge

## REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS (ECF Nos. 153, 183, 188)

This case was filed June 5, 2019, and has been referred to the undersigned for all pretrial matters. (ECF Nos. 1; 45; 91). Plaintiff brought *Bivens* claims against the individual defendants and Federal Tort Claims Act claims against the United States. Defendants Aquino, Garcia, Klein, Mason, and Popp moved to dismiss the complaint on May 18, 2013. (ECF No. 153). About three months later, Defendant Carlos Goris moved to dismiss adopting the arguments in the motion at ECF No. 153. (ECF No. 188). On August 25, 2023, Defendant United States of America moved to dismiss the complaint. (ECF No. 188). The motions are fully briefed and ready for report and recommendation. For the reasons below, the undersigned recommends that the individual defendants' motions be **GRANTED** and the United States' motion be **GRANTED IN PART**.

## I.      GOVERNING STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)). In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also*

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

## II.   ANALYSIS

The individual defendants argue that the complaint must be dismissed because (1) Plaintiff failed to state a *Bivens* claim, (2) his claim is precluded by collateral estoppel, and (3) they are entitled to qualified immunity. (ECF Nos. 153, 183). The United States argues it is entitled to dismissal because the Federal Tort Claims Act ("FTCA") claim (1) is precluded by collateral estoppel and (2)

damages for property loss is precluded by the "detention of goods" exception to the FTCA's waiver of sovereign immunity. The government also argues that the Michigan Constitution claim should be dismissed for sovereign immunity. (ECF No. 188).

 A. Individual Defendants' Motions to Dismiss (ECF Nos. 153, 183)

  1. Background

Plaintiff alleges that the federal law enforcement officer-Defendants searched his property before procuring a search warrant. There are two houses at issue: the searches of 5745 Artesian and 5754 Artesian. (ECF No. 135, PageID.894-95). Both homes are in Detroit, Michigan. (*Id.* at PageID.874). Plaintiff alleges that around 6:00 a.m. on August 18, 2016, he received an alert on his telephone indicating that the alarm at his home at 5745 Artesian had been activated. (*Id.* at PageID.894-95). Plaintiff alleges that at "some time before 9:00 a.m.," the alarm for the other home, 5754 Artesian, was activated. (*Id.* at PageID.896). Plaintiff was able to monitor the searches of his homes via his home security network until agents "ripped" the cameras out of the walls. (*Id.* at PageID.895). Plaintiff was in Tennessee at the time of these searches.

Plaintiff acknowledges that 5745 Artesian was searched pursuant to a valid warrant. (*Id.* at PageID.879) (indicating the search of 5745 occurred with a "legal search warrant"). Plaintiff alleges that Defendants entered 5754 Artesian

prematurely and obtained a search warrant only after they performed the search.

(*Id.* at PageID.878) (indicating that the search occurred at around 9 a.m. but the

search warrant was not obtained until 2:20 p.m.).  This lawsuit is about the search

at 5754 Artesian.

Defendants provided the arrest warrant issued for Plaintiff as well as the

search warrants issued for both homes.  (ECF No. 153, PageID.992).  As the search

warrants and arrest warrants are a matter of public record, the Court may consider

these documents in ruling on a motion to dismiss without converting the motion

into one for summary judgment.  *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508

F.3d 327, 335-36 (6th Cir. 2007) ("When a document is referred to in the pleadings

and is integral to the claims, it may be considered without converting a motion to

dismiss into one for summary judgment."); *Bailey v. City of Ann Arbor*, 860 F.3d

382, 386 (6th Cir. 2017) (noting a court ruling on a motion to dismiss "may

consider materials in addition to the complaint if such materials are public records

or are otherwise appropriate for the taking of judicial notice.").  The search warrant

for 5754 Artesian confirms that it was signed at 2:20 p.m., well after the search

allegedly began.

Defendants note that at the time of the searches, Plaintiff was being

investigated for conducting illegal drug transactions on the "dark web[.]"  (ECF

No. 153, PageID.992).  Plaintiff was later charged in the Southern District of

Florida with conspiracy to distribute controlled substances and conspiracy to commit money laundering.  (*Id.* at PageID.993).  Plaintiff pleaded guilty to both charges and was sentenced to 140 months in prison.  (*Id.*).

Plaintiff moved to vacate his sentence, arguing that his attorneys were ineffective for failing to discover that his homes on Artesian were searched without search warrants and that the prosecutors violated his due process rights by failing to disclose the purported warrantless searches.  (*Id.*).  Plaintiff particularly argued that the search of 5754 Artesian was illegal and that his counsel was ineffective for failing to discover that the search was illegal.  (*Id.* at PageID.993-94).  That motion was denied.  The judge held that the search was conducted pursuant to a signed warrant.

2.    Discussion

The undersigned will address Defendants' arguments beginning with collateral estoppel.  Defendants argue that the conclusion related to the validity of the search warrants made by the Southern District of Florida should bind this Court.  The undersigned disagrees.  "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v. United States*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosier Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

Before this Court is the issue of whether Defendants entered Plaintiff's home at 5754 Artesian at around 9 a.m. on August 18, 2016, and then later acquired a search warrant for the home. That issue was not developed before another Court. The Southern District of Florida encountered slightly different arguments over how the warrants were deficient. In his motion to vacate, Plaintiff argued first that there were no search warrants and, when the warrants were provided in the government's response, that the affidavits or applications leading to the issuance of the warrants had not been signed. (ECF No. 71-1, PageID.465). He also argued that his counsel failed to object to the search warrant being obtained after the residence was searched. (ECF No. 153-5, PageID.1047). The Southern District of Florida judge concluded that the warrants, applications, and affidavits were *signed* and that Plaintiff's lawyers could not be faulted for raising a meritless argument. (*Id.*). That judge did not address Plaintiff's argument (or the fact) that the search was conducted around 9 a.m. but the warrant was not signed until later that afternoon. As a result, that issue was not actually and necessarily determined. The undersigned suggests that collateral estoppel should not apply here because no court has addressed the issue now being raised before the Court and collateral estoppel requires that "the *identical issue* was raised and actually litigated in prior proceedings[.]" *Gen. Elect. Med. Sys. Europe v. Prometheus Health*, 394 F. App'x 280, 283 (6th Cir. 2010) (emphasis added).

Next is Defendants' argument that Plaintiff did not state a *Bivens* claim.[1]

To establish a claim under *Bivens*, a plaintiff must show that he was "deprived of rights secured by the Constitution or laws of the United States" and that "the defendants who allegedly deprived [him] of those rights acted under color of federal law." *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (emphasis omitted); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The question in these cases is whether *Bivens* extends to the claims presented in a lawsuit. The Supreme Court recognized three contexts in which a private right of action exists against federal officials for constitutional violations, knowns as the *Bivens* trilogy: "a claim against FBI agents

---

[1] Earlier in this case, the undersigned recommended that Plaintiff be given leave to file an amended complaint that would include a *Bivens* claim against the defendants. (ECF No. 93). Plaintiff argues that the recommendation, which stated that the amended complaint appears to plead a *Bivens* claim, precludes Defendants' arguments. Plaintiff implicates the law-of-the-case doctrine, which states that a legal decision made at one stage of the litigation controls in future stages of the ligation, *United States v. Faulkenberry*, 759 F. Supp. 2d 915, 920 (S.D. Ohio 2010). Application of the doctrine is not mandatory. When controlling legal authority has changed, the Court should revisit an earlier decision. *McCready v. Michigan State Bar Standing Comm. on Character & Fitness*, 926 F. Supp. 618, 621 (W.D. Mich. 1995). The undersigned will not apply the law-of-the case doctrine to conclude that Plaintiff sufficiently states a *Bivens* claim. At the time of the recommendation, the controlling case from the Supreme Court, *Egbert*, had been published for only two months. The Court did not have the benefit of cases interpreting *Egbert* or of thorough briefing on whether Plaintiff's claims state a *Bivens* claims. Moreover, a ruling on a motion to amend a complaint decides whether leave should be given to amend, it is not a ruling on the merits of the allegations in the proposed amended complaint. So determining now whether Plaintiff failed to state a claim is appropriate.

for handcuffing a man in his own home without a warrant; a claim against a

Congressman for firing his female secretary; and a claim against prison officials

for failure to treat an inmate's asthma." *Ziglar v. Abbasi*, 582 U.S. 120, 140

(2017); *see Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228, 245-

47(1979); *Carlson v. Green*, 446 U.S. 14, 19 (1980).

Expanding the reach of *Bivens* to a different factual scenario "is now a

'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Iqbal*, 556 U.S. at

675); *see also Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022).  In deciding whether

*Bivens* can afford relief, we first ask "whether the case presents 'a new *Bivens*

context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the

Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (alteration in

original) (quoting *Ziglar*, 582 U.S. at 139-40).  A difference is "meaningful" if, for

example, it involves different constitutional rights, a different category of officers

as defendants, a difference in the specificity of agency actions at issue, a difference

in institutional expertise, or differing risks of judicial intrusion.  *Ziglar*, 582 U.S. at

139-40; *Abbasi*, 137 S. Ct. at 1859-60 (list of differences to consider includes "the

rank of the officers involved; . . . the generality or specificity of the official action;

. . . the statutory or other legal mandate under which the officer was operating;

[and] the risk of disruptive intrusion by the Judiciary into the functioning of other

branches.").  If so, the context is new, and a *Bivens* remedy is "unavailable if there

are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 136).  "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

Defendants argue that Plaintiff's claim presents a new *Bivens* context for four reasons: (1) there is a different category of defendants, (2) the officers worked under a different legal mandate, (3) the officers worked under different judicial guidance, and (4) the conduct here is different from *Bivens*.  They also contend that there are other remedial structures in place for Plaintiff, thus recognizing a *Bivens* claim is inappropriate.  Plaintiff did not address the substance of the arguments.

Since Plaintiff's case is about a search in violation of the Fourth Amendment, we must determine whether Plaintiff's case is meaningfully different from *Bivens*, the Fourth Amendment case.  In that case, Bivens was arrested and his home was searched for alleged narcotics violations by the Federal Bureau of Narcotics (current-day Drug Enforcement Administration).  "The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, [Bivens] was taken to the federal courthouse in Brooklyn, where he was interrogated, booked,

and subjected to a visual strip search." *Bivens*, 403 U.S. at 389. Bivens sued the federal officials claiming that the arrest and search were effected without a warrant, that unreasonable force was used during the arrest, and that the arrest was made without probable cause. *Id.* The federal agents argued that Bivens had no federal cause of action against them for violating the Fourth Amendment. The Court concluded that Bivens could bring his Fourth Amendment claims against the federal agents in federal court, so the case was remanded for further proceedings. *Id.* at 397-98.

### a.    Different Category of Defendants

The Supreme Court cautions that "even a modest extension is still an extension," and has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar*, 582 U.S. at 135 (internal quotation marks omitted) (quoting *Malesko*, 534 U.S. at 68). Exactly what constitutes a "new category of defendants" is unclear. Because *Bivens* concerned the action of line-level federal drug agents, we know narcotics agents are not a new category of defendants. *See Egbert*, 596 U.S. at 512 ("Indeed, if the 'new context' inquiry were defined at such a fine level of granularity, every case would raise a new context, because the Federal Bureau of Narcotics no longer exists.") (Sotomayor, J., concurring in part). In her concurring opinion, Justice Sotomayor suggested that line-level officers at any of the 83 federal law enforcement agencies would not

create a new category of defendants, but appellate and district courts are finding

new categories of defendants from agencies outside the Drug Enforcement

Administration.

Indeed, some courts have not hesitated, even after Sotomayor's concurring

opinion, to conclude that a case involving United States Marshals Service deputy

marshals involves a new category of defendants. *See Cain v. Reinhart*, 2023 WL

6439438, at *4 (6th Cir. July 25, 2023) (collecting cases). In *Egbert*, Border Patrol

agents were a new category of defendants. Of course, that case involved matters of

border security and immigration, which was easily found to be a new context from

the *Bivens* trilogy. Others still are finding that FBI agents or deputized task force

officers of other agencies constitute new categories of defendants. *See, e.g.*, *Smith*

*v. Arrowood*, 2023 WL 6065027, at *4 (W.D.N.Y. Sept. 18, 2023) (collecting

cases); *see also Daughtry v. Englade*, 2023 WL 7386702, at *16 (E.D. Tex. Oct.

17, 2023) (IRS agent and federal prosecutor were new category of defendants).

Those Courts reasoned that, because the officers in those cases were not narcotics

officers, they created an extension of *Bivens*. The direction from the Supreme

Court is that even a modest extension of *Bivens* is impermissible, and that

recognizing a new category of defendants is such an extension.

The defendants in *Bivens* were agents of the Drug Enforcement

Administration's predecessor, the Federal Bureau of Narcotics. Here, they are

narcotics agents and agents of other agencies—the Postal Service, the Internal Revenue Service, the Federal Bureau of Investigation, and deputized task force officers. According to Defendants, the search was part of a coordinated operation, which has not been recognized in the *Bivens* trilogy. (ECF No. 153, PageID.999). Since the Sixth Circuit, albeit in an unpublished decision, summarily concluded that U.S. Marshals deputies were different enough from narcotics agents to be a new category of defendants, then the undersigned concludes that the mix of narcotics agents, FBI agents, IRS agents, Postal agents, and deputized task force agents here are a new category of defendants presenting a new context.

b. Legal Mandate

At the time of the search, Defendants did not have a search warrant for 5754 Artesian, but they had an arrest warrant for Plaintiff. In *Bivens*, a home was searched without a warrant and an arrest was made without a warrant. Defendants argue that the existence of the arrest warrant, by itself, makes this context new. (ECF No. 153, PageID.1000).

Indeed, Defendants were on the premises, at least in part, to effect an arrest pursuant to a warrant. The arrest warrant gave them limited authority to enter Plaintiff's home (Plaintiff alleged that 5754 was his residence (ECF No. 135, PageID.876)). "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in

which the suspect lives when there is reason to believe the suspect is within."

*Payton v. New York*, 445 U.S. 573, 603 (1980).

Similar circumstances were present in *Cain v. Reinhart*, 2023 WL 6439438

(6th Cir. July 25, 2023), where the Sixth Circuit found its case presented a new

context.  There, law enforcement agents working as deputized United States

Deputy Marshals arrived at Cain's house with an arrest warrant for Cain's nephew,

who they believed resided at the home.  Cain told the deputies that this nephew

was not there.  The deputies threatened to take Cain to jail and tear his house

down, and rushed at him with weapons drawn.  Cain put his hands up and was

taken to the ground by one of the defendant deputies while the other officers

searched his home.  Cain alleged that the officers violated the Fourth Amendment

by entering his home without a warrant and without probable cause to believe his

nephew was there.  *Id.* at *1.  The court said this presented a new context.  The

task force members did not have a search warrant for Cain's home, but the arrest

warrant gave them limited authority to enter the home.  "[T]he existence of a

warrant creates a new context for *Bivens* purposes."  *Id.* at *3 (collecting cases).

The agents had an arrest warrant and a search warrant for another of

Plaintiff's homes nearby.  The arrest warrant would have given the agents some

authority to enter either or both homes, like the agents in *Cain*.  This presents a

new context.  That the agents here conducted a full search of the home absent a

warrant does not erase the existence of the arrest warrant and the fact that the warrant changes the legal mandate under which the agents worked.  As in *Cain*, this is a new context.

### c.    Judicial Guidance and Agents' Conduct

Defendants contend that the arrest warrant for Plaintiff makes the extent of judicial guidance different than in *Bivens*.  This argument rests on the fact that an arrest warrant carries with it the limited authority to enter the dwelling in which the suspect lives when there is reason to believe the suspect is within.  (ECF No. 153, PageID.1001) (citing *Payton v. New York*, 445 U.S. 573, 603 (1980).  As there was an arrest warrant, that makes this a different context.

Defendants argue that the factual differences between what occurred here and what occurred in *Bivens* are also meaningful.  Here, unlike Bivens, they did not manacle Plaintiff in front of his family, strip search him, threaten his family with arrest, or arrest him.  Instead, they searched two homes and planned to arrest Plaintiff.  While the degree of difference is not stark, there is a difference.

### d.    Special Factors Counseling Hesitation

Having concluded that there are at least two meaningful differences from *Bivens*, the undersigned suggests that this case presents a new context.  Next, we consider whether Congress might be better suited to fashion a remedy in this new context.  At this step, we consider "whether there is *any* rational reason (even one)

to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Ziglar*, 582 U.S. at 136) (emphasis in original).  In making this consideration, the undersigned is mindful that courts cannot "predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." *Id.* at 493 (citing *Ziglar*, 582 U.S. at 136).  This uncertainty is a special factor counseling against relief and suggests that a "new context" case is sufficient alone to require dismissal.  *Id.* (citing *Hernández v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) ("The newness of this 'new context' should alone require dismissal").  The existence of alternative remedies is also a reason to believe Congress is better suited to fashion a remedy.  *Id.*

Defendants argue that Plaintiff has alternative remedies in the event of an unlawful warrantless search: motions to suppress evidence, motions for return of property, federal habeas corpus petition (which Plaintiff pursued), use of the federal law enforcement agencies' internal grievance procedures, and pursuit of a FTCA claim against the United States (which Plaintiff raised here).  (ECF No. 153, PageID.1003-10).

Alternative remedies are or were available to Plaintiff.  For instance, the FTCA allows Plaintiff to sue the United States for monetary damages for tortious conduct of its employees, which Plaintiff has done.  *See* 28 U.S.C. § 2674; *see also McNeil v. Duda*, 2023 WL 2587884, at *3-4 (N.D. Ill. Mar. 21, 2023) (finding the

existence of statutory grievance procedures against FBI agents and the FTCA to be alternative remedies that precluded a *Bivens* remedy). Also available is a report of allegations of misconduct to the Department of Justice's Office of the Inspector General which investigates allegations or refers them for investigation. *See Massaquoi v. Fed. Bureau of Investigation*, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023). And as the Sixth Circuit has pointed out, "the Attorney General is authorized under 31 U.S.C. § 3724 to settle certain claims for personal injury, death, or property damage caused by a law enforcement officer employed by the Department of Justice acting within the scope of employment." *Cain*, 2023 WL 6439438, at *4. This non-exhaustive list of alternative remedies counsels against extending *Bivens* to Plaintiff's claims against the individual defendants. Thus, the undersigned suggests that the claims be dismissed against the individual defendants. Given this recommendation, the undersigned will not address Defendants' last argument, that they are entitled to qualified immunity.

Last is Defendants' argument that Plaintiff's claims for breaking and entering and trespassing in violation the Fourth Amendment and of the Michigan Constitution are cognizable only against the United States under the Westfall Act. Defendants are correct that they are immune from the state-law claims. The Westfall Act, 28 U.S.C. § 2679, immunizes federal employees from liability for torts committed within the scope of their employment. The Act permits the United

States to certify that a federal employee acted within the scope of his employment and be substituted as defendant for the federal employee defendants. *Id.* at 2679(d)(1). On May 18, 2023, the United States filed a Notice of Substitution for the individual defendants on the state-law claims. The government certified that the individual defendants were acting within the scope of their federal employment during the events alleged in the complaint. (ECF No. 152, PageID.977-78). This is the proper mechanism to bring the state-law claims. Therefore, the state-law claims should be dismissed against the Defendants.

       B.    <u>United States' Motion to Dismiss</u>

Plaintiff alleges that the United States is liable under the FTCA for the actions of its officers as described above. (ECF No. 135). Plaintiff sues for breaking and entering, trespass, and violation of the Michigan Constitution's search and seizure clause.

The United States of American moved to dismiss the complaint arguing that (1) Plaintiff's FTCA claim is precluded by collateral estoppel, (2) Plaintiff's property damage claim is precluded by the "detention of goods" exception to the FTCA's waiver of sovereign immunity, and (3) the Court lacks subject matter jurisdiction over the state-law claims because Plaintiff cannot identify a waiver of sovereign immunity permitting the claim. (ECF No. 188).

The undersigned's conclusion, above, regarding the collateral estoppel argument applies here.  In short, the undersigned suggests that collateral estoppel does not apply because the judge in the Southern District of Florida did not make a determination on Plaintiff's argument that the 5754 Artesian search was warrantless.

Turning to the FTCA claim, by way of background, the United States, as a sovereign, is immune from suit unless it explicitly waives its immunity.  *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941).  By enacting the FTCA, Congress waived the United States' sovereign immunity under limited circumstances for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment.  28 U.S.C. §§ 1346(b)(1), 2679(d)(1); *United States v. Orleans*, 425 U.S. 807 (1976).  Claims under the FTCA involve a two-step analysis.  "First the district court applies local law to determine liability and to assess damages.  Second, federal law is invoked to bar proscribed recoveries, such as punitive damages."  *Palmer v. United States,* 146 F.3d 361, 366 (6th Cir. 1998) (citation omitted).

The United States begins with a brief discussion of the state laws under which Plaintiff sued the government: breaking and entering, trespass, and Michigan's search and seizure provision.  As the government notes, in Michigan,

breaking and entering is a crime, not a tort, and private citizens cannot levy

criminal charges.  (ECF No. 188, PageID.1398); *see* M.C.L. §§ 750.110, 750.110a;

*People v. Herrick*, 550 N.W.2d 541, 544 (Mich. Ct. App. 1996) (citing *Linda R.S.

v. Richard D.,* 410 U.S. 614, 619 (1973) ("in American jurisprudence . . . a private

citizen lacks a judicially cognizable interest in the prosecution or nonprosecution

of another")).  The "breaking and entering" claim should be dismissed because it is

not judicially cognizable.[2]

"A trespass is an unauthorized invasion upon the private property of

another."  *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 302

(Mich. Ct. App. 1995).  The government argues that there was no trespass because

the agents entered the home pursuant to a search warrant.  The facts do not support

this position since the search warrant was not signed until after the search had

begun.  Trespass comes within the waiver of sovereign immunity for wrongful or

negligent acts by government employees.

The United States argues that the Michigan Constitution claim should be

dismissed for lack of subject matter jurisdiction.  Plaintiff has the burden of

identifying a waiver of sovereign immunity.  Without a waiver, the claim must be

---

[2] Though not argued by the government, Plaintiff's claim of criminal trespass should also be dismissed.  In his complaint, he cites M.C.L. § 750.552, Michigan's criminal trespass statute, as a violation.  (ECF No. 135, PageID.877, ¶ 9).  Plaintiff lacks the authority to charge someone with a crime.  The undersigned will address the tort of trespass for the rest of this report and recommendation.

dismissed on jurisdictional grounds. *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). The government cites cases from outside this Circuit holding that the United States has not waived immunity for claims arising under state constitutions, or that the plaintiff failed to identify such a waiver. (ECF No. 188, PageID.1403-04). Plaintiff in response did not identify a waiver of sovereign immunity for claims allegation violation of Michigan's Constitution. Instead, he argued that the Michigan Constitution grants sovereign immunity for Michigan employees, but not federal officers, so the United States can be liable for violations of the Constitution. Plaintiff's argument misses the mark. The question is not whether the agents are immune from suit under Michigan law, but whether the United States is immune from suit for state constitutional violations. The Second Circuit says it is. *Hernandez v. United States*, 939 F.3d 191, 204-05 (2d Cir. 2019); *see also Ramirez v. Reddish*, 2020 WL 1955366, at *25, n. 26 (D. Utah Apr. 23, 2020) (collecting cases). Without authority to the contrary, the undersigned suggests that the FTCA does not waive the United States' sovereign immunity from liability for violations of the Michigan Constitution, so the claim should be dismissed.

The United States argues that Plaintiff's claim for damages for property loss is precluded by the "detention of goods" exception to the FTCA. This exception to the FTCA bars "any claim arising in respect of . . . the detention of any goods, merchandise, or other property by any . . . law enforcement officer." 28 U.S.C. §

2680(c). The phrase "arising in respect of" has been broadly interpreted to mean "any claim arising out of." *Kosak v. United States,* 465 U.S. 848, 854 (1984). "Detention" likewise has been broadly construed to include negligent handling, storage, and loss of detained property. *Id.* at 852-54.

Plaintiff argues that this exception does not apply here because he did not allege that his property was detained. (ECF No. 194). The purpose of "detention" in the statute is presumed to be the ordinary meaning of the word. *Id.* at 853. Black's Law Dictionary defines "detention" in the context of property as the "custody of property; esp., an employee's custody of the employer's property without being considered as having legal possession of it." 514 (9th ed.). The Sixth Circuit has stated that "detention is generally associated with a period of temporary custody or delay." *Kurinsky v. United States,* 33 F.3d 594, 597 (6th Cir. 1994). Thus, "detention" means custody.

In his complaint Plaintiff alleges the defendants are liable for damage and for "theft of property." (ECF No. 135, PageID.876, ¶ 7). The "theft of property" implies that the agents detained his property, i.e., that they took property from the home. This claim falls within the detention of goods exception to FTCA waiver of immunity, and so it should be dismissed. But Plaintiff also alleges that the agents damaged his property. This alone does not suggest they took and damaged property, but suggests (or could suggest) that his property was damaged and left at

the house.  If the agents destroyed property at the home and left the property there, the agents did not detain the property.  Without a detention of property, the exception to immunity does not apply.  Therefore, to the extent that Plaintiff alleges that the agents damaged and left property at the home, the United States is not immune from such damages.  Any damages award for damaged property should be only for property damaged but not detained.

In conclusion, the undersigned recommends that the individual defendants be dismissed for failure to state a *Bivens* claim and that all but the trespass claim should be dismissed against the United States, and if any damages are awarded for damaged property, that the award be limited to property not detained.

## II.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the individual Defendants' motions to dismiss (ECF Nos. 153, 183) be **GRANTED** and the United States' motion to dismiss (ECF No. 188) be **GRANTED IN PART, DENIED IN PART**, leaving the trespass claim.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 30, 2023.                    s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on November 30, 2023.

s/Sara Krause
Case Manager
(810) 341-7850