UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT K. DECKER,

        Plaintiff,

                                  Case No. 19-cv-11654
                                  Hon. Matthew F. Leitman

v.

LILITA INFANTE, *et al.*,

        Defendants.

_____/

## ORDER (1) OVERRULING DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION (ECF Nos. 212, 213); (2) OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION (ECF No. 214); AND (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 153, 183, 188)

In this action, Plaintiff Robert K. Decker alleges that the Defendants – the United States of America and certain employees of the United States – improperly entered, remain in, and searched his home without a warrant and damaged his property. Defendants moved to dismiss Decker's claims, and the assigned Magistrate Judge issued a report and recommendation in which he recommended that the Court dismiss all of Decker's claims except for a trespass claim brought against the United States (the "R&R"). (*See* R&R, ECF No. 210.) Now pending before the Court are objections to the R&R by all parties. (*See* Objections, ECF Nos. 212, 213, 214.) For the reasons explained below, the Court **OVERRULES** all of

the objections and **GRANTS IN PART AND DENIES IN PART** Defendants'
Motions to Dismiss.

## I

## A

This case arises out of the search of a home that Decker owns in Detroit,
Michigan.  In 2016, the Government was investigating Decker for allegedly selling
drugs on the internet.  On August 11, 2016, in connection with that investigation, the
Government obtained an arrest warrant for Decker. (*See* Arrest Warrant, ECF No.
153-1.)  On August 17, 2016, the Government obtained a search warrant for a home
that Decker owned at 5745 Artesian Street in Detroit, Michigan. (*See* Search
Warrant, ECF No. 59-2.)  The next day, at 2:20 p.m., the Government obtained a
search warrant for a second home Decker owned on Artesian Street, 5754 Artesian.
(*See* Search Warrant, ECF No. 59-3.)  A task force comprised of officers and agents
from several different Government agencies searched both homes on August 18,
2016.  As explained in further detail below, Decker maintains that the search of 5754
Artesian Street occurred at around 9:00 a.m. on August 18, several hours *before* the
Government obtained the search warrant for that property.

Decker was not at either residence at the time of the searches.  The
Government later found and arrested Decker and charged him in the Southern
District of Florida with conspiracy to distribute controlled substances in violation of

21 U.S.C. §§ 841 and 846 and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. (*See* Indictment, ECF No. 59-4.)  Decker pleaded guilty to both charges pursuant to a Rule 11 Plea Agreement, and the Florida District Court sentenced him to 140 months in prison. (*See* Judgment, ECF No. 59-5.)  Decker appealed his convictions and sentence, and the Eleventh Circuit affirmed. *See United States v. Decker*, 832 F. App'x 639 (11th Cir. 2020).

**B**

On June 22, 2021, Decker filed a Motion to Vacate his sentence in the Florida District Court pursuant to 28 U.S.C. § 2255. (*See* Mot. to Vacate, ECF No. 153-4.) In the Motion to Vacate, Decker insisted that the Government searched his homes on Artesian Street without a warrant, and he argued that his trial counsel rendered ineffective assistance when counsel failed to, among other things, "discover[] that the search of my houses, internet, and computers was warrantless." (*Id.*, PageID.1029.)  Decker also argued that the prosecutor violated his (Decker's) Due Process rights when the prosecutor "withheld material information about the warrantless search of my houses." (*Id.*, PageID.1030.)

In response to Decker's Motion, the Government presented to the court the search warrants for both properties.  Decker then changed his argument.  In his reply brief, instead of arguing that the Government never obtained warrants to search his homes, Decker said only that the Government did not obtain a warrant to search

3

5754 Artesian until hours after it actually conducted that search. (*See* Reply, ECF No. 153-5, PageID.1047.)   Decker argued in his reply that his counsel was ineffective for "[f]ail[ing] to object to the [p]rosecutorial misconduct that was comitted against the Defendant, Mr. Decker, by [...] the illegal search warrant that was obtained *after* [the residence at 5754 Artesian] was already searched by the United States." (*Id.*; emphasis added.)

The Florida District Court denied Decker's Motion to Vacate in a written order. (*See* Fla. Dist. Ct. Order, ECF No. 71-1.)   In that order, the court rejected Decker's argument that his trial counsel was ineffective for "failing to investigate (and presumably moving to suppress) 'warrantless' searches of Mr. Decker's premises and computers." (*Id.*, PageID.464.)   In a section of the order titled "The 'Warrantless' Search," the Florida District Court held that Decker's "knowing and voluntary guilty plea waive[d] his argument that his counsel was ineffective for failing to challenge the 'warrantless' search of his premises and computer." (*Id.*)  Despite holding that the claim was waived, the court also said that "Decker's claim [was] factually without any substance" because "[t]here was no warrantless search." (*Id.*)

## C

It does not appear that Decker ever sought reconsideration of or appealed the Florida District Court's ruling denying his Motion to Vacate.  Instead, Decker filed

this action.  (*See* Compl., ECF No. 1.)   The operative Complaint in this case is Decker's Amended Complaint found on the Court's docket at docket number 135. In that Amended Complaint, Decker again says that while the Defendants searched his home at 5754 Artesian "some time before 9:00 a.m." on August 18, the Defendants did not actually obtain a search warrant for that property until several hours after the search. (Am. Compl., ECF No. 135, PageID.894-896.)   Decker therefore insists that at the time the search was conducted, Defendants did not have a warrant to search the property at 5754 Artesian. (*See id.*)  He further claims that the property at his home was damaged by the Defendants and that certain property was stolen after Defendants failed to secure his home after they conducted their search. (*See id.*)

Decker named as Defendants the Government agents and officers that he says were involved in the search 5754 Artesian.   Those Defendants are: (1) Drug Enforcement Administration Special Agent Stephen Popp; (2) Postal Inspector Rafael Garcia, (3) FBI Special Agent Stephen Mason, (4) IRS Special Agent Karli Klein; (5) IRS Special Agent Santiago Aquino; and (6) FBI Special Agent Carlos Goris.[1]  Decker brought claims under the Federal Tort Claims Act (the "FTCA") for

---

[1] Decker named several other Government officers and agents as Defendants, but it does not appear that any of those Defendants were ever served with the operative Amended Complaint and none have formally appeared in the case and/or moved to dismiss any claims that may be brought against them.

breaking and entering, trespass, and violation of the Michigan Constitution's unreasonable search and seizure clause, and a claim for damages under *Bivens Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See id.*)  On May 31, 2023, the United States was "substituted for all of the Defendants named in their individual capacities as to [Decker's] claims for breaking and entering, trespass, and violation of the Michigan Constitution" (*i.e.*, the claims Decker brought under the FTCA). (Order, ECF No. 158.)

## D

The individual Defendants have now moved to dismiss Decker's *Bivens* claim. (*See* Motions to Dismiss, ECF Nos. 153, 183.)  In addition, the United States has moved to dismiss Decker's state-law claims brought under the FTCA. (*See* Mot. to Dismiss, ECF No. 188.)

The Motions were referred to the assigned Magistrate Judge.  On November 30, 2023, the Magistrate Judge issued the R&R in which he recommended that the Court (1) grant the individual Defendants' Motions to Dismiss the *Bivens* claim and (2) grant in part and deny in part the United States' Motion to Dismiss. (*See* R&R, ECF No. 210.)

The Magistrate Judge began with the *Bivens* claim brought against the individual Defendants.  He explained that "[e]xpanding the reach of *Bivens* to a different factual scenario 'is now a disfavored judicial activity,'" and he concluded

that Decker had failed to state a viable *Bivens* claim because, among other things, there were "at least two meaningful differences from [the scenarios described in] *Bivens*." (*Id.*, PageID.1525, 1529, quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).)

The Magistrate Judge then moved to the claims brought against the United States under the FTCA. In its Motion to Dismiss, the United States primarily argued that those claims were barred by collateral estoppel because (1) the claims were premised on Decker's allegation that the Defendants searched 5754 Artesian without a warrant and (2) the United States District Court for the Southern District of Florida previously found, when denying Decker's Motion to Vacate his sentence, that there was "no warrantless search" of that property. The Magistrate Judge rejected the Defendants' argument "because the judge in the Southern District of Florida did not make a determination on [Decker's] argument that the 5754 Artesian search was warrantless." (*Id.*, PageID.1533.)

The Magistrate Judge next concluded that Decker's "breaking and entertaining claim should be dismissed because it is not judicially cognizable," and he recommended that the Court dismiss Decker's claim under the Michigan Constitution because "the FTCA [did] not waive the United States' sovereign immunity from liability for violations of the Michigan Constitution." (*Id.*, PageID.1534-1535.)

Finally, the Magistrate Judge discussed Decker's trespass claim.  He rejected the United States' argument that "there was no trespass because the agents entered [5754 Artesian] pursuant to a search warrant" because "[t]he facts do not support [that] position since the search warrant was not signed until after the search had begun." (*Id.*, PageID.1534.)  He therefore recommended that the Court allow that claim to proceed. (*See id.*, PageID.1534, 1537.)  The Magistrate Judge further recommended that the only damages for property loss that Decker could recover for that trespass were damages to property not detained by the Government. (*See id.*, PageID.1537.)

## E

All parties have now filed objections to the R&R. (*See* Objections, ECF Nos. 212, 213, and 214.)  The Court will discuss each individual objection in turn below.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party does not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**III**

The Court begins with the Defendants' objections to the R&R.  For the reasons explained below, the objections are **OVERRULED**.

**A**

The Defendants first object to "the Magistrate Judge's conclusion that Decker's claims are not barred by collateral estoppel." (Objections, ECF No. 212, PageID.1544-1548.)  Defendants argue that when the Florida District Court denied Decker's Motion to Vacate his sentence, that court "found that the search of [Decker's] home at 5754 Artesian on August 18, 2016 […] was not warrantless." (*Id.*, PageID.1544.)  Defendants insist that "[t]hat ruling should have marked the end of this lawsuit, which ultimately seeks a directly contradictory verdict that there *was* a warrantless search." (*Id.*; emphasis in original.)  The Court cannot conclude on the basis of the current briefing that Decker's claims are barred by collateral estoppel.

The Sixth Circuit "has held that a prior decision shall have preclusive effect on an issue raised in a later case if four elements are met: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have

had a full and fair opportunity to litigate the issue in the prior proceeding." *Nat. Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 908 (6th Cir. 2001).

The Court is not yet prepared to conclude whether (1) the Florida District Court actually held that there "was no warrantless search" or (2) assuming the court so held, the holding was necessary to the outcome of the proceedings. As explained above, the Florida District Court held that Decker's "knowing and voluntary guilty plea waive[d] his argument that his counsel was ineffective for failing to challenge the 'warrantless' search of his premises and computer." (Fla. Dist. Ct. Order, ECF No. 71-1, PageID.464.) The court nonetheless went on to discuss the merits of Decker's warrantless-search claim. It said that "Decker's claim [was] factually without any substance" because "[t]here was no warrantless search." (*Id.*) Given this wording and structure of the ruling, it is possible that the discussion of the merits – the statement that "there was no warrantless search" – was *dicta* and thus not entitled to preclusive effect. *See, e.g.*, *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 491 (6th Cir. 2021) (explaining that *dicta* is not entitled to preclusive effect).

Moreover, even if the Florida District Court's comments about the merits of the warrantless-search claim could be considered an alternative holding and not mere *dicta*, it would still not be clear that that alternative holding would be entitled to preclusive effect. The Sixth Circuit "has not decided whether alternative grounds for a judgment are each 'necessary to the outcome' for the purposes of issue

10

preclusion in a subsequent case involving only one of the grounds." *Nat. Satellite Sports*, 253 F.3d at 910.  But it has held that where "one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion." *Id.*  Here, it is not clear to the Court whether the Florida District Court's discussion of the merits, if treated as an alternative holding, would be entitled to preclusive effect under this test.

Given this uncertainty, the Court cannot yet conclude whether Decker's trespass claim is barred by collateral estoppel, and the Court therefore **OVERRULES** Defendants' first objection.  The Court, however, will grant the United States leave to file a renewed motion to dismiss on its collateral estoppel theory.  In that motion, the United States shall (1) address whether the Florida District Court's discussion of the merits was *dicta* or an alternative holding and (2) specifically identify and apply relevant case law addressing the preclusive effect of alternative grounds for relief.[2]

---

[2] In the R&R, the Magistrate Judge concluded that collateral estoppel did not apply here for a different reason, namely that the Florida District Court "did not address [Decker's] argument (or the fact) that the search was conducted around 9 a.m. but the warrant was not signed until later that afternoon. As a result, that issue was not actually and necessarily determined." (R&R, ECF No. 210, PageID.1521.)  If the United States files a renewed motion to dismiss, it shall address the reasoning underlying the Magistrate Judge's conclusion that Decker's warrantless-search claim was not "actually and necessarily determined" by the Florida District Court.

**B**

Defendants next object to the Magistrate Judge's conclusion that Decker may recover damages for "property that was damaged while [the Defendants searched] Decker's home." (Objections, ECF No. 212, PageID.1548-1554.)  Defendants argue that the "detention of goods" exception to the waiver of sovereign immunity under the FTCA bars Decker from claiming such damages.[3]  More specifically, Defendants contend that "[d]uring the time [they] were at [5754 Artesian] conducting their investigation, the contents of the home (and especially any items Defendants allegedly touched, damaged, and/or destroyed) were temporarily detained, triggering [the] detention of goods exception." (*Id.*, PageID.1551.)

However, it is not yet clear to the Court whether or to what extent the detention of goods exception applies here.  In the operative Amended Complaint, Decker alleges that Defendants damaged, among other things, his real property and fixtures, including the doors to that property and his personal security system, when they searched his home at 5754 Artesian. (*See* Am. Compl., ECF No. 135, PageID.895-896.)  It is not obvious that the detention of good exception applies to real property and fixtures, and Defendants have not cited any cases so holding.  Instead, the two

---

[3] The "detention of goods" exception provides that the Government's waiver of sovereign immunity does not apply to "[a]ny claim arising in respect to the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer." 28 U.S.C. § 2680(c).

cases on which Defendants primarily rely, *Lippman v. City of Miami*, 622 F.Supp.3d 1337 (S.D. Fla. 2008) and *Mid-South Holding Co. v. United States*, 123 F.Supp.2d 1330 (M.D. Fla. 1999) involved damage to personal property found during the searches an automobile and fishing boat respectively.  The Court concludes that Defendants' arguments under the detention of goods exception are best resolved on at summary judgment and on the basis of a fully-developed factual record – a record that identifies what property, if any, was damaged.  With such a record developed, Defendants may present arguments under the detention of goods exception and explain to the Court why that exception bars Decker's claim with respect to the particular property at issue.[4]

## C

In Defendants' third objection, Defendants argue that they had a legal basis for entering Decker's home and that the Magistrate Judge therefore erred when he recommended allowing Decker to proceed on his trespass claim. (*See* Objections, ECF No. 212, PageID.1554-1556.)  More specifically, Defendants say that the arrest warrant for Decker, which "was issued five days before the search of 5754 Artesian," provided the Defendants the "legal authority […] to enter Decker's property." (*Id.*, PageID.1545-1555.)  Defendants insist that because "it is undisputed that [they] had

---

[4] Likewise, the Court is not yet prepared to hold that Decker cannot recover damages for property that Decker says were stolen from his home.  The United States may re-raise that argument on summary judgment on a full factual record.

an arrest warrant for Decker when they entered his home, entry was authorized and not trespassing." (*Id.*, PageID.1555.)

The Court is not yet prepared to dismiss Decker's trespass claim based on the existence of the arrest warrant for two reasons.  First, the Court cannot conclude from the pleadings alone that the arrest warranty authorized the individual Defendants to enter 5754 Artesian.  An arrest warrant "implicitly carries with it the limited authority to enter a dwelling in which the suspect lives" *only* "when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).  *See also United States v. Hardin*, 539 F.3d 404, 416 (6th Cir. 2008) (holding that search of residence violated defendant's Fourth Amendment rights where, prior to the search, officers did not have sufficient evidence to believe that the subject of an arrest warrant was inside the residence).  Here, Decker's allegations do not suggest that the Defendants had reason to believe that he was present in 5754 Artesian when they entered that residence.  And if they did not have such a reasonable belief, then the arrest warrant would not have authorized their entry.

Second, and in any event, even if the arrest warrant authorized the individual Defendants' initial entry into 5754 Artesian, there seems to be a plausible allegation that Defendants' exceeded the scope of that authorization.  Decker's Amended Complaint may be read as plausibly alleging that Defendants stayed inside 5754 Artesian to conduct their search of the property for a substantial period of time after

it would have become clear to them that Decker was not present.  It is not clear to the Court whether the arrest warrant would authorize such a prolonged search of Decker's residence under those circumstances.  Thus, the Court cannot yet conclude that the Defendants' possession of an arrest warrant for Decker is fatal to Decker's trespass claim.

## D

Finally, Defendants "object[] to the Magistrate Judge's conclusion that a warrantless search of 5754 Artesian occurred." (Objections, ECF No. 212, PageID.1556-1557.)  Defendants contend that "Decker's warrantless search allegation is just that – an allegation." (*Id.*, PageID.1556.)  The Court agrees with Defendants that Decker's contention that 5754 Artesian was searched before Defendants obtained a warrant to search that property is just an allegation, but it is an allegation that the Court must accept as true for the purposes of resolving their Motions to Dismiss.

## F

For all of these reasons, Defendants' objections are **OVERRULED**.

**IV**

The Court now turns to Decker's objections.[5]   For the reasons explained below, the objections are **OVERRULED**.

**A**

Decker first objects to the R&R on the basis that the Court has not appointed him counsel. (*See* Objections, ECF No. 214, PageID.1562.)   Decker contends that he has limited access to legal resources and that without counsel, he is being "denie[d] meaningful access to the courts." (*Id. See also id.*, PageID.1569.)   This objection is **OVERRULED** because it is not relevant to any of the bases on which the Magistrate Judge resolved the R&R.   The Court further notes that, unlike in criminal cases, there is no constitutional right to the appointment of counsel in civil cases, and the Court has broad discretion in determining whether counsel should be appointed in such cases. *See Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) ("[A]ppointment of counsel in a civil case is ... a matter within the discretion of the court. It is a privilege and not a right.") (internal quotation omitted). And here, Decker has shown an ability to communicate his arguments clearly and coherently.

---

[5] On January 23, 2024, Decker filed a Motion for an Extension of Time to file his objections to the R&R. (*See* Mot., ECF No. 218.)   Decker has since filed those objections, so the Court will **TERMINATE** Decker's January 23 Motion as moot. Decker has also filed a Motion to for Leave File a Sur-Reply. (*See* Mot., ECF No. 227.)   That motion is **GRANTED**.   The Court will construe Decker's Sur-Reply Motion as a sur-reply in further support of his objections to the R&R.

The Court is therefore not persuaded at this time that it is appropriate to appoint counsel for Decker.

**B**

Decker next objects to the Magistrate Judge's recommendation that the Court dismiss his *Bivens* claim against the individual Defendants. (*See* Objections, ECF No. 214, PageID.1562-1565.) Decker first says that the Magistrate Judge previously granted him leave to file an Amended Complaint to add a *Bivens* claim against the individual Defendants, and he insists that the Magistrate Judge's decision now to recommend dismissal of that claim violates the "law of the case" doctrine. (*Id.*) The Court disagrees.

The law of the case doctrine "states that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Moses v. Bus. Card. Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). But the doctrine "is a rule of judicial comity rather than one of jurisdictional limitation;" it "does not limit a court's power to make an independent decision" but rather "directs a court's discretion." *Id.* (quotation omitted). Indeed, the law of the case doctrine "is not an 'inexorable command.'" *E.E.O.C. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, Local No. 120*, 235 F.3d 244, 250 (6th Cir. 2000). "It is within the sole discretion of a court to determine if a

17

prior ruling should be reconsidered." *Id. See also United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (recognizing that "[t]he doctrine of the law of the case […] does not foreclose a court from reconsidering issues in a case previously decided by the same court or another court").

Here, the Magistrate Judge did not abuse his discretion when he decided to reevaluate the merits of Decker's *Bivens* claim even though he had initially held that it was not futile for Decker to raise that claim in his pleadings.  As the Magistrate Judge explained in the R&R (*see* R&R, ECF No. 210, PageID.1522 at n. 1), his recommendation to allow Decker to plead a *Bivens* cause of action was made without the benefit of briefing on the effect of *Egbert v. Boule*, 142 S. Ct. 1793 (2022), a decision in which the Supreme Court continued its narrowing of *Bivens*, and cases interpreting and applying *Egbert*.  For the reasons given by the Magistrate Judge, the Court concludes that the law of the case doctrine did not bar the Magistrate Judge from revisiting this issue and that he properly did so.

For all of these reasons, Decker's objection that the Magistrate Judge violated the law of the case doctrine is **OVERRULED**.

## C

Next, Decker objects to the Magistrate Judge's conclusion that his *Bivens* claim is not viable because the claim presents a "new context." (Objections, ECF No. 214, PageID.1565-1569.)  The Court disagrees.

18

The United States Court of Appeals for the Sixth Circuit recently explained

the requirements for a *Bivens* claim and the limited nature of such a claim as follows:

> To establish a claim under *Bivens*, a plaintiff must show that he was "deprived of rights secured by the Constitution or laws of the United States" and that "the defendants who allegedly deprived [him] of those rights acted under color of federal law." *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (emphasis omitted). [….]
>
> The Supreme Court has explicitly recognized only three contexts in which a private right of action for damages may be properly brought against federal officials for constitutional violations: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017); see *Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228, 245–47(1979); *Carlson v. Green*, 446 U.S. 14, 19 (1980).
>
> Expanding the reach of *Bivens* "is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); see *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). Thus, in determining whether *Bivens* can afford relief in a particular case, a court must first ask "whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (alteration in original) (quoting *Ziglar*, 582 U.S. at 139–40). If so, the context is new, and a *Bivens* remedy is "unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new

context,' a court may not recognize a *Bivens* remedy." *Id.*
(quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

*Cain v. Rinehart*, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023).

The Sixth Circuit has further noted that "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them. The Supreme Court has not recognized a new Bivens action in the 40 years since *Carlson*.  And it has repeatedly declined invitations […] to create such actions. [….]. Most telling of all, it has rejected extensions of *Bivens* to claims that involve constitutional rights that *Bivens* already reaches." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 535 (6th Cir. 2020).

The Magistrate Judge correctly ruled that Decker's *Bivens* claim is not viable. First, the claim presents a new context.  *Bivens* addressed a warrantless entry into a home, whereas the individual Defendants who entered 5754 Artesian had an arrest warrant for Decker.  The legal framework for evaluating the entry here thus differs from *Bivens*.  For the reasons explained above, here the Court must ask, among other things, whether the individual Defendants had a reasonable basis for believing that Decker was present inside 5754 Artesian and whether the arrest warrant authorized the length of their stay within that residence.  *Bivens* did not involve a consideration of either of these issues.  And "courts in several recent cases have found that the existence of a[n arrest] warrant creates a new context for *Bivens* purposes." *See*,

*Cain*, 2023 WL 6439438, at *3 (collecting cases and holding that existence of arrest warrant created new context).

Second, "'special factors counsel[ ] hesitation' in recognizing the new claim." *Id.* at *4, quoting *Callahan*, 965 F.3d at 524. As explained above, the search of 5754 Artesian was conducted by a joint task force of agents from several different Government agencies, including the Postal Service, IRS, and FBI in a coordinated operation. "Allowing claims for damages against members of federal [] task forces could impair the government's recruitment of officers to participate in those task forces and could negatively affect task members' performance of their duties." *Id.* That "special factor" is an additional reason for the Court to be cautious about extending *Bivens* here. *See also Logsdon v. United States Marshal Service*, 91 F.4th 1352, 1358 (10th Cir. 2024) (recognizing that because "chilling participation in joint task forces is [] a potential cost of expanding *Bivens* [, ….] [t]he Supreme Court would [likely] hold 'that the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action in [this] context,' where the impact of potential liability on cooperation among law-enforcement agencies needs to be assessed") (quoting *Egbert*, 596 U.S. at 495). For all of these reasons, the Court agrees with the Magistrate Judge that it would not be appropriate to expand *Bivens* to the facts that exist here.

Decker finally argues that he should be allowed to proceed under *Bivens* because the damages available under *Bivens* are "more effective" than his other available remedies. (Objections, ECF No. 214, PageID.1569.)  But as the Magistrate Judge correctly explained in the R&R, there are "[a]lternative remedies available" to Decker, including a claim for monetary damages against the United States under the FTCA, which Decker is pursuing here. (R&R, ECF No. 210, PageID.1530-1531.)  Moreover, as the Supreme Court noted in *Egbert*, it "does [not] matter that existing remedies do not provide complete relief." *Egbert*, 596 U.S. at 493 (internal quotation marks omitted).  Instead, "[t]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts. So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498.  Decker has not persuaded the Court that the remedial processes available here, and identified by the Magistrate Judge in the R&R, are so insufficient as to allow him to pursue a claim under *Bivens*.

For all of these reasons, Decker's objections to the Magistrate Judge's recommendation to dismiss his *Bivens* claim are **OVERRULED**.

**D**

Finally, Decker objects to the Magistrate Judge's decision to resolve the Motions to Dismiss without holding a hearing. (*See* Objections, ECF No. 214, PageID.1570.) But Decker cites no authority for the proposition that the Magistrate Judge was required to hold a hearing before ruling on the Motions, and the Court is aware of none. Decker further objects that the Magistrate Judge has not issued a scheduling order, but no such order is required until after the Court resolves Defendants' Motions to Dismiss. This objection is therefore **OVERRULED**.

**V**

For all of the reasons explained above, the objections to the R&R filed by all parties (ECF Nos. 212, 213, 214) are **OVERRULED**. The individual Defendants' Motions to Dismiss Decker's *Bivens* claim (ECF Nos. 153, 183) are **GRANTED.** The United States' Motion to Dismiss (ECF No. 188) is **DENIED** to the extent that it seeks dismissal of Decker's trespass claim and **GRANTED** in all other respects. The only claim remaining in this action is Decker's claim against the United States under the FTCA for trespass.

    **IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: March 26, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 26, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126